**SUSAN MARTIN (AZ#014226)**
**JENNIFER KROLL (AZ#019859)**
**MARTIN & BONNETT, P.L.L.C.**
1850 N. Central Ave. Suite 2010
Phoenix, Arizona 85004
Telephone: (602) 240-6900
smartin@martinbonnett.com
jkroll@martinbonnett.com

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Wayne Bryant, on his own behalf and on behalf of all others similarly situated,<br><br>    Plaintiff,<br>v.<br><br>Pension Plan for the Arizona Pipe Trades Pension Trust Fund; Board of Trustees of the Arizona Pipe Trades Pension Trust, Plan Administrator of the Pension Plan for the Arizona Pipe Trades Pension Plan; Arizona Pipe Trades Defined Contribution Plan; Board of Trustees of the Arizona Pipe Trades Defined Contribution Plan, Plan Administrator of the Arizona Pipe Trades Defined Contribution Plan<br><br>    Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT** |

      This is an action brought by Plaintiff on his own behalf and on behalf of other similarly situated participants in the Pension Plan for the Arizona Pipe Trades Pension Trust Fund and the Arizona Pipe Trades Defined Contribution Plan under the Employee Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §1001 *et seq.* to recover pension benefits due and to enforce rights and remedy violations of pension plans and ERISA.

## JURISDICTION AND VENUE

1. Jurisdiction of this matter is appropriate pursuant to 29 U.S.C. §1132(e)(1) and 28 U.S.C. §1331.

2. Venue is proper pursuant to 29 U.S.C. §1132(e) as the Plan is administered in the District of Arizona, Defendants breached their obligations in this District and Defendants reside and may be found in this District.

## THE PARTIES

3. Commencing in or around 1982 and continuing at various times through 2011, Plaintiff Wayne Bryant ("Plaintiff" or "Mr. Bryant"), worked for employers who had union contracts requiring them to contribute to the Pension Plan for the Arizona Pipe Trades Pension Trust Fund ("Pension Plan") and the Arizona Pipe Trades Defined Contribution Plan ("DC Plan") (together, the Pension Plan and the DC Plan are referred to herein as the "Plans"). By virtue of his employment, Mr. Bryant became eligible for retirement benefits under the Plans and Mr. Bryant is and was at all relevant times a Participant in each of the Plans within the meaning of § 3(7) of ERISA, 29 U.S.C. § 1002(7).

4. Defendant Pension Plan is a multi-employer defined benefit employee pension benefit plan within the meaning of § 3(2) of ERISA, 29 U.S.C. § 1002(2), which was established and maintained for the purpose of providing retirement benefits for participants and their beneficiaries, including Plaintiff.

5. Defendant DC Plan is a multi-employer defined contribution employee pension benefit plan within the meaning of § 3(2) of ERISA, 29 U.S.C. § 1002(2), which was established and maintained for the purpose of providing retirement benefits for participants and their beneficiaries, including Plaintiff.

6. Defendant Board of Trustees of the Pension Plan, Plan Administrator of the Pension Plan for the Arizona Pipe Trades Pension Plan (the "Pension Plan Administrator" or "Pension Plan Board of Trustees") is the plan administrator for the Pension Plan within

the meaning of § 3(16)(A) of ERISA, 29 U.S.C. § 1002(16)(A), and the Board and Trustees are each a "fiduciary" with respect to the Pension Plan as defined in § 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A).

7. Defendant Board of Trustees of the DC Plan, Plan Administrator of the Arizona Pipe Trades Defined Contribution Plan (the "DC Plan Administrator" or "DC Plan Board of Trustees") (together with the Pension Plan Administrator, referred to herein as the "Plan Administrators") is the plan administrator for the Pension Plan within the meaning of § 3(16)(A) of ERISA, 29 U.S.C. § 1002(16)(A), and Board and the Trustees are each a "fiduciary" with respect to the DC Plan as defined in § 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A).

## GENERAL ALLEGATIONS

8. As a result of his employment, Mr. Bryant obtained vested rights under the Plans and earned nonforfeitable rights to his accrued benefits under the Plans.

9. When Mr. Bryant began employment as an Arizona pipefitter, he worked for employers who had contracts with the United Association of Journeymen and Apprentices of the Plumbing Industry of the United States and Canada Local 741 ("Local 741") located in Tucson.

10. Effective in or around January 1, 2008, Local 741 and United Association of Journeymen and Apprentices of the Plumbing Industry of the United States and Canada Local 469 ("Local 469") were consolidated.

11. At all times relevant, pursuant to collective bargaining agreements with Local 741, the Plumbing and Air Conditioning Contractors of Arizona ("PAC") were required to make contributions to the Plans on behalf of their employees who are members of the Local 741 bargaining unit.

12. At all times relevant, pursuant to collective bargaining agreements with Local 469, PAC employers were required to make contributions to the Plans on behalf of their employees who are members of the Local 469 bargaining unit.

13. At various times during his employment, Mr. Bryant also worked for employers outside the jurisdiction of Local 741 and Local 469 in areas covered by the United Association Reciprocity Program for Pension Funds ("reciprocating funds"), including in the states of Nevada and Colorado.

14. Pursuant to the United Association Reciprocity Program for Pension Funds and the terms of the Plans, when contributions are received for participants from funds outside of the jurisdiction of the Plans ("reciprocal contributions"), the reciprocating funds transfer the reciprocal contributions to the Plans on behalf of the participants at the rate in effect for the reciprocating funds.

15. On or about February 15, 2004 and March 12, 2004, the Plans were amended to provide for the acceptance of reciprocal contributions received on behalf of members of Locals 469 or 741 for work they performed outside the jurisdiction of those locals ("Amendment 1").

16. Amendment 1, effective June 1, 2002, provided that for employees on whose behalf reciprocal contributions were made at rates higher than those required under the collective bargaining agreements of Local 741 or Local 469, any excess over the current hourly contribution rate will be paid into the DC Plan "and credit for the full amount of such excess contributions shall be given to the participant."

17. Plaintiff worked outside the jurisdiction of Local 741 and Local 469 on and after the effective date of Amendment 1 (June 1, 2002) and upon the adoption of Amendment 1, Plaintiff obtained accrued benefits and vested rights to benefits in accordance with Amendment 1.

18. Defendants failed to follow the terms of Amendment 1.

19. By amendments adopted in or around May 2004 ("Amendment 2"), the Plans were purported to be amended retroactively without any notice to participants.

20. Under Amendment 2, if the participant had not earned a full pension credit during a year reciprocal contributions were paid on his behalf, all reciprocal contributions

4

were paid into the Pension Plan and no money was paid into the DC Plan until after the participant had earned a full pension credit.

21.     Under Amendment 2, the Pension Fund also kept reciprocal contributions over and above those required to earn a full pension credit and even when a full pension credit had been earned, the Pension Fund only allocated reciprocal contributions to the DC Plan on the basis of a ratio, the numerator of which was the current contribution rate for the DC Plan under Arizona contracts and the denominator of which was the total hourly contribution to the Pension Plan and the DC Plan under Arizona contracts.

22.     By amending the Plans to retain moneys paid to the Pension Plan in excess of the current Pension Plan Arizona contribution rate, Amendment 2 retroactively reduced Mr. Bryant's accrued benefits and significantly reduced the rate of his future benefit accrual in the DC Plan.

23.     As a result of the actions set forth herein, Defendant Pension Plan was unjustly enriched.

24.     Under the terms of the DC Plan, participants each have an Individual Account for accounting purposes consisting in relevant part of:

(a) The amount in the Individual Account, as of the last previous Valuation Date, plus
(b) The contributions actually made on behalf of the Employee since the last Valuation Date, including any contributions (but not earnings or forfeitures) owed for a period of Qualified Military Service in the armed forces of the United States consistent with and to the extent required by the Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. Section 4301 et seq., as amended, and Section 414(u) of the Internal Revenue Code, as amended; plus
(c) The investment yield determined by the Trustees to be applicable to the Individual Accounts on a basis proportionate to the amount in the Individual's Account as of the Valuation Date, minus
(d) The administrative charge determined by the Trustees to be applicable to Individual Accounts (less any amounts which are not payable…), but not more than the amount in the Individual Account.

5

25. Under the terms of the DC Plan, the "investment yield" which is utilized in part to determine the amount of the individual account is determined in relevant part as follows:

> (a)…the investment income shall be divided by the total in all Individual Accounts as of the last previous Valuation Date (excluding any Individual Accounts paid or forfeited since the last previous Valuation Date as well as contributions received since that date).
> (b)The investment yield to be credited to each Individual Account (excluding Individual Accounts paid or forfeited since the previous Valuation Date) shall be the amount in the Individual Account as of the previous Valuation Date multiplied by the fraction obtained in subsection (a) above.

26. Under the terms of the DC Plan, the "investment income" which is utilized to determine the investment yield is determined in relevant part as follows:

> (a) Determine the total market value of the Fund as of the last preceding Valuation Date (less the total of all Individual Accounts paid or forfeited).
> (b) Determine the total market value of the Fund as of the new Valuation Date, (less the total of all contributions, including contributions owed for a period of Qualified Military Service, received during the Fiscal Year).
> (c) Determine the total administrative charges paid by the fund during the Fiscal Year.
> (d) Add (b) to (c).
> (e) Subtract (a) from (d). The resulting figure shall be the investment income.

27. Under the terms of the DC Plan, Valuation Date is defined in relevant part as the last business day of each Fiscal Year.

28. Under the terms of the DC Plan, the Fiscal Year is defined as June 1 of any year to May 31 of the succeeding year.

29. On or about December 28, 2008, the Plan was amended retroactively to adopt a midyear Valuation Date of November 30, 2008.

30. In performing the midyear calculation and fixing the amount of each participant's Individual Account as of the midyear Valuation Date, Defendants failed to comply with the terms of the Plan requiring that "contributions actually made on behalf of the Employee since the last Valuation Date" be added to the participants' Individual Accounts.

31. From November 30, 2008, the date of the alleged midyear valuation through the end of that fiscal year and next Valuation Date, May 31, 2009, the DC Plan reported investment gains of 9.2889%.

32. By failing to credit employer contributions received on behalf of Mr. Bryant and other DC Plan participants from the last Valuation Date through November 30, 2008, Mr. Bryant and other DC Plan participants were harmed and were not credited with the 9.2889% investment gains received during that time frame.

33. Mr. Bryant elected to receive his payments from the DC Plan in equal installments effective in or around August 1, 2007.

34. Mr. Bryant began receiving installment payments from the DC Plan on or about August 24, 2007.

35. Mr. Bryant received substantially equal payments from the DC Plan from August 24, 2007 through May 31, 2010.

36. Mr. Bryant continued to work and contributions to the DC Plan were made on his behalf through in or around October 2011.

37. In or around January 2012, the DC Plan asserted that it had overpaid Mr. Bryant and thereafter threatened to bring legal action against Mr. Bryant, demanding he was liable to re-pay alleged overpayments at 8% interest.

38. In fact, Defendants have underpaid Mr. Bryant and have failed to pay Mr. Bryant the value of his Individual Account in violation of the terms of the Plans and demanded Mr. Bryant repay such amounts with interest.

39. The DC Plan contains no provision allowing the DC Plan to recoup purported overpayments made to participants nor any provision for recouping purported overpayments made to participants with an 8% interest rate.

40. Beginning in or around April 2012, Mr. Bryant made claims for benefits under the terms of the Plans including, *inter alia*, the failure to properly allocate his reciprocity contributions and investment earnings in accordance with the terms of the

Plans.

41. On or about June 24, 2012 and August 12, 2012, Mr. Bryant asked for the policies and guidelines for the valuation of DC Plan Individual Accounts.

42. Mr. Bryant was not provided with any documents responsive to his request for information concerning the valuation of his Individual Accounts until approximately five months after his June 24, 2012 request when he was first provided with, *inter alia*, some Plan documents, the summary plan descriptions and some Plan amendments.

43. On multiple occasions, Mr. Bryant asked for information relevant to his claims for benefits including detailed information regarding how his DC Plan individual account was valued and how Defendants determined Mr. Bryant was overpaid.

44. Defendants have repeatedly provided Mr. Bryant with inconsistent and differing information concerning the amount of Mr. Bryant's DC Plan benefits and the amount that they claimed Mr. Bryant was purportedly overpaid by the DC Plan.

45. Mr. Bryant has fully exhausted the Plan's claims and appeals procedures.

## CLASS ALLEGATIONS

46. In addition to Plaintiff's individual claims, this action is commenced pursuant to Federal Rule of Civil Procedure 23 as a class action on behalf of the following classes and all appropriate subclasses as determined by the Court:

Class 1: All participants in the Pension Plan and DC Plan who had accrued benefits as of June 1, 2002 and their eligible spouses and beneficiaries.

Class 2: All Participants in the DC Plan as of November 30, 2008 and their eligible spouses and beneficiaries.

47. Upon information and belief, Class 1 is so numerous that joinder of all persons in the classes is impracticable. The DC Plan's Valuation Reports indicate that as of December 31, 2008, there were 3,985 accounts in "active status." According to the Plan's Form 5500 Annual Return/Report of Employee Benefit Plan, the Pension Plan had 1,651 active participants as of June 1, 2009.

48. Upon information and belief, Class 2 is so numerous that joinder of all

persons in the class is impracticable. Upon information and belief, there were there were more than 1,000 participants in the Plans who had accrued benefits as of June 1, 2002.

49. Upon information and belief, the class members are geographically dispersed throughout the states of Arizona and New Mexico and live and work in many other states as well.

50. There are questions of law and fact common to the members of the classes including whether Defendants violated ERISA and the terms of the Plans by failing to allocate reciprocal contributions in accordance with Amendment 1 and by adopting a retroactive amendment that changed the allocation of contributions among the Plans for reciprocal contributions thereby reducing accrued benefits and the rate of future benefit accrual without notice; whether Defendants violated the terms of the Plans by not adding employer contributions at the midyear Valuation Date; whether Defendants violated their terms of the Plan and ERISA in failing to properly calculate participants' Individual Accounts; and whether Defendants breached their fiduciary responsibilities by, *inter alia*, failing to follow the terms of the Plan and ERISA.

51. The claims of Plaintiff are typical of the claims of Class 1 in that Plaintiff and all class members have the same rights under ERISA and challenge the same conduct and because resolution of the claims will provide common answers to all members of the class in that all class members suffered the same actual harm caused by the same ERISA violations complained of herein.

52. The claims of Plaintiff are typical of the claims of Class 2 in that Plaintiff and all class members have the same rights under the terms of the Plans and challenge the same conduct and because resolution of the claims will provide common answers to all members of the class in that all class members suffered the same actual harm caused by the same violations of ERISA and the terms of the Plans complained of herein.

53. Plaintiff will fairly and adequately represent the interests of the class members. He has diligently pursued his rights and has engaged the undersigned experienced ERISA and class action counsel.

54. The prosecution of separate proceedings by the individual members of the class would create a risk of inconsistent or varying adjudications which would be dispositive of the interests of other members not parties to the litigation or substantially impair or impede their ability to protect their interests.

55. Defendants have acted or refused to act on grounds generally applicable to the classes as a whole by engaging in the same violations of ERISA with respect to the classes, thereby making final injunctive relief and corresponding declaratory relief appropriate with respect to the class as a whole.

56. Questions of law and fact common to the members of the classes predominate over any questions affecting only individual members. A class proceeding is superior to other available methods for the fair and efficient adjudication of this controversy including, *inter alia*, because the class members have suffered from the same violations of ERISA and the terms of the Plan, the sheer size of the class and the fact that they are dispersed throughout the country would make such proceedings impracticable, relatively small amounts of monetary relief may be involved in some cases which would present a significant and recurring obstacle to the ability of class members to retain counsel to prosecute these ERISA violations in separate legal proceedings yet likely have caused and will continue in the future to cause loss of valuable pension rights unless remedied through injunctive and other appropriate equitable relief.

## COUNT I
## TO REDRESS VIOLATIONS OF ERISA'S ACCRUAL OF BENEFIT PROVISIONS PURSUANT TO SECTION 502(a)(3)

57. Section 204(g) of ERISA, 29 U.S.C. § 1054(g), provides in part:

(g) Decrease of accrued benefits through amendment of plan

(1) The accrued benefit of a participant under a plan may not be decreased

10

by an amendment of the plan, other than an amendment described in section 1082(c)(8) or 1441 of this title.
(2) For purposes of paragraph (1), a plan amendment which has the effect of–
(A) eliminating or reducing an early retirement benefit or a retirement-type subsidy (as defined in regulations), or
(B) eliminating an optional form of benefit, with respect to benefits attributable to service before the amendment shall be treated as reducing accrued benefits. In the case of a retirement-type subsidy, the preceding sentence shall apply only with respect to a participant who satisfies (either before or after the amendment) the preamendment conditions for the subsidy. ...

58. Section 204(h) of ERISA, 29 U.S.C. § 1054(h), provides in relevant part:

(h) Notice of significant reduction in benefit accruals
(**1**) An applicable pension plan may not be amended so as to provide for a significant reduction in the rate of future benefit accrual unless the plan administrator provides the notice described in paragraph (2) to each applicable individual (and to each employee organization representing applicable individuals) and to each employer who has an obligation to contribute to the plan.

59. By the acts and omissions complained of above, including, *inter alia,* by amending the Plan to reduce accrued benefits, by failing to give notice of a significant reduction in the rate of future benefit accruals, by failing to disclose Plan amendments and by calculating and paying benefits and determining the right to benefits based on unlawful and/or undisclosed Plan amendments, Defendants violated ERISA, including, *inter alia,* ERISA §§ 204(g) and (h) and applicable regulations.

60. As a proximate result of Defendants' violations of ERISA, Mr. Bryant and class members have been harmed and, *inter alia*, have been deprived of vested and accrued benefits due or to become due.

61. Section 502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B), provides that:
A civil action may be brought -
(1) by a participant or beneficiary - . . .

(B) to recover benefits due to him under the terms of the plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the

11

terms of the plan.

62. Section 502(a)(3) of ERISA provides that a civil action may be brought by a participant (A) to enjoin any act or practice which violates any provision of Title I of ERISA or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of Title I of ERISA or the terms of the plan.

63. Plaintiff and Class members are entitled to declaratory, injunctive and other equitable relief and to benefits, including but not limited to, an order declaring that Defendants violated ERISA § 204 and applicable regulations, enjoining Defendants to properly allocate all reciprocal contributions to the DC Plan and the Pension Plan, to immediately pay all benefits wrongfully withheld, an order surcharging the fiduciaries, an order reforming the Plan, and enjoining Defendants to credit and/or pay benefits in accordance with the terms of the Plan retroactively together with an accounting of how those benefits are or were determined, such other and further relief as to the Court is just and proper, together with pre-judgment interest, attorneys' fees and costs.

## COUNT II
### FOR RECOVERY OF BENEFITS AND ENFORCEMENT OF RIGHTS UNDER THE TERMS OF THE PLAN PURSUANT TO ERISA SECTION 502(a)(1)(B)

64. Plaintiff repeats and realleges each allegation set forth in the previous paragraphs as though fully set forth herein.

65. By the acts complained of above, Defendants violated the terms of the DC Plans by, *inter alia*, miscalculating Plaintiff's benefits and his Individual Share under the DC Plan, by claiming Plaintiff was overpaid and by failing to allocate benefits in accordance with the terms of the Plans and by failing to pay all benefits due under the DC Plan.

66. As a proximate result of Defendants' violations of the Plans, Plaintiff and Class 1 and 2 members have been harmed and have been deprived of benefits due or to become due.

67. Mr. Bryant is entitled to an order requiring Defendants to re-calculate and credit and/or pay Mr. Bryant and Class 1 and Class 2 members all benefits due under the terms of the Plan and ERISA retroactively together with interest and an accounting of how those benefits are or were determined and an order directing Defendants to make Plaintiff and Class 1 and Class 2 members whole for the delay in paying the benefits Mr. Bryant and Class 1 and Class 2 members are entitled to under the terms of the Plans and under ERISA together with all other appropriate relief including pre-judgment interest, post-judgment interest, attorneys' fees and costs.

## COUNT IV
## TO REDRESS DEFENDANTS' BREACHES OF FIDUCIARY DUTY PURSUANT TO SECTION 502(a)(3) OF ERISA

68. Plaintiff repeats and realleges each allegation set forth in the previous paragraphs as though fully set forth herein.

69. ERISA §404(a)(1), 29 U.S.C. §1104(a)(1), provides in relevant part:
   1) Subject to Sections 403(c) and (d), 4042, and 4044, a fiduciary shall discharge
   his duties with respect to a plan solely in the interest of the participants and beneficiaries and–
      (A) for the exclusive purpose of:
         i) providing benefits to participants and their beneficiaries; and
         (ii) defraying reasonable expenses of administering the plan;
      (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;
         ***
      (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this title and title IV.

70. Defendants have a fiduciary responsibility to administer the plan in accordance with ERISA and the documents and instruments governing the plan insofar as such documents and instruments are consistent with ERISA and to provide Plaintiff and class members with disclosures including disclosures regarding amendments to the Plans.

71. By the acts and omissions complained of above, Defendants breached their fiduciary duties to Plaintiff and class members.

72. As a proximate result of Defendants' breaches of fiduciary duty, Plaintiff and class members have been harmed and, *inter alia*, have been deprived of rights protected by the terms of the Plans and ERISA and Defendants have been unjustly enriched.

73. As a result of Defendants' breaches of fiduciary duty, Plaintiff and class members are entitled to declaratory, injunctive and other equitable and make whole relief, including but not limited to, an order declaring that Defendants breached their fiduciary duties and violated ERISA §404 and applicable regulations, an order requiring Defendants to disgorge the value of the benefits unjustly withheld from Plaintiff and class members together with all profits attributable thereto, an accounting of all benefits, an order surcharging the fiduciaries and granting Plaintiff and class members such other and further relief as to the Court deems just and proper, together with pre-judgment interest, post-judgment interest, attorneys' fees and costs.

## COUNT V
## FOR VIOLATION OF ERISA'S CLAIMS PROCEDURE AND DISCLOSURE REQUIREMENTS

74. Plaintiff repeats and realleges each allegation set forth in the previous paragraphs as though fully set forth herein.

75. Section 104(b)(4) of ERISA, 29 U.S.C. §1024(b)(4), provides in pertinent part:

> The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description, and the latest annual report, and terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated.

76. Section 503 of ERISA, 29 U.S.C. §1133 provides in relevant part:

> In accordance with regulations of the Secretary, every employee benefit plan shall--
> **(1)** provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to

> be understood by the participant, and
>
> **(2)** afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

77. ERISA § 503, 29 U.S.C. § 1133, and regulations thereunder, 29 C.F.R. §2560.503-1, provide that plan administrators must respond to claims and appeals in a timely manner, must provide claimants upon request and free of charge all documents relevant to their claim for benefits and must provide claimants whose claims for benefits are denied with the specific reasons for the claim denial and a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary.

78. Section 502(c)(1)(B) of ERISA, 29 U.S.C. §1132(c)(1)(B), provides in pertinent part:

> Any administrator. . .(B) who fails or refuses to comply with a request for any information which such administrator is required by this title to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may, in the court's discretion, be personally liable to such participant or beneficiary in the amount of up to [$100] a day from the date of such failure or refusal and the court may in its discretion order such other relief as it deems proper. For purposes of this paragraph, . . .each violation described in subparagraph (b) with respect to a single participant or beneficiary, shall be treated as a separate violation.

79. Pursuant to the Debt Collection Improvement Act of 1996 (62 Fed. Reg. 40696) the $100 limit referred to in ERISA §502(c) was increased to $110. 29 C.F.R. §2575.502(c)(1) therefore states in pertinent part that: "The maximum amount of the civil monetary penalty established by Section 502(c)(1) of ERISA [has been] increased from $100 a day to $110 a day."

80. By the acts and omissions set forth above, Defendants violated ERISA and the Plans' claims and disclosure requirements and applicable regulations. As a result of Defendants' acts and omissions, Plaintiff has been damaged and his rights to benefits

under the Plans and to pursue his claims for benefits under the Plans has been unduly inhibited, thwarted, prejudiced and delayed.

81. Pursuant to ERISA § 502(a)(3) and ERISA § 502(c)(1)(B), Plaintiff is entitled to civil monetary penalties of $110 for each day for each separate violation for failing to provide Plaintiff with requested documents and injunctive and other equitable relief to redress Defendants' claims procedure and disclosure violations, including, *inter alia*, enjoining Defendants from violating the claims regulations, and barring Defendants from henceforth violating ERISA claims procedures and disclosure requirements, together with interest, attorneys' fees and costs.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, as follows:

    A.    Declaring that Defendants violated the terms of the Plans;

    B.    Declaring that Defendants violated ERISA §§ 104, 204, 404 and 503 and regulations thereunder;

    C.    Declaring that Plaintiff and Class members are entitled to have their benefits recalculated and credited and/or paid in accordance with the terms of the Plan and ERISA retroactively;

    D.    Enjoining Defendants from violating the terms of the Plans;

    E.    Enjoining Defendants from violating ERISA §§ 104, 204, 404 and 503 and regulations thereunder;

    F.    An order reforming the Plans;

    G.    An order surcharging the trustees;

    H.    Enjoining Defendants to re-calculate reciprocal contributions in accordance with the terms of the Plan and ERISA and to credit and/or pay Plaintiff and class members benefits retroactively and to provide an accounting of how those benefits are or were determined;

I. Enjoining Defendants to make Plaintiff and class members whole for the delay and failure to pay benefits in accordance with the terms of the Plan and ERISA;

J. Enjoining Defendants from violating ERISA's claims procedures requirements;

K. Enjoining Defendants from violating ERISA's disclosure requirements;

L. Ordering Defendants to disgorge the value of the benefits unjustly withheld together with all profits attributable thereto;

M. Ordering Defendants to make Plaintiff and class members whole;

N. Awarding Plaintiff and class members all benefits wrongfully withheld;

O. Awarding Plaintiff $110 per day for each day in excess of thirty for each and every document Defendants failed to provide to him in timely fashion;

P. Awarding Plaintiff and class members pre-judgment and post-judgment interest;

Q. Awarding Plaintiff and class members all attorneys' fees under ERISA §502(g), 29 U.S.C. §1132(g) and/or the common fund theory;

R. Awarding Plaintiff and class members costs of suit; and

S. Awarding such other and further relief the Court deems appropriate.

DATED this 31st day of July, 2013.

**MARTIN & BONNETT, P.L.L.C.**

By: s/Susan Martin
 Susan Martin
 Jennifer L. Kroll
 1850 N. Central Ave. Suite 2010
 Phoenix, AZ 85004
 (602) 240-6900

 Attorneys for Plaintiff