WO

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Wayne Bryant, | No. CV-13-01563-PHX-GMS |
|     Plaintiff/Counterdefendant, | **ORDER** |
| v. | |
| Arizona Pipe Trades Pension Trust Fund, et al., | |
|     Defendants/Counterclaimants. | |

Before the Court is Plaintiff's Motion for Class Certification. (Doc. 44.) For the following reasons, the Court grants this Motion in part and denies it in part.

**BACKGROUND**

This is a putative class action on behalf of participants in the Pension Plan for the Arizona Pipe Trades Defined Contribution Plan brought pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.*, to recover benefits that Plaintiff Bryant believes were improperly withheld and miscalculated by Defendants, pension plans and their respective trustees and administrators. Plaintiff Bryant alleges the following facts in support of his claims.

For a number of years, Mr. Bryant worked in the pipe trade profession subject to collective bargaining agreements. He is a member of the America Pipe Trades Pension Trust Fund ("Pension Plan"), a defined benefits plan, and the Arizona Pipe Trades Defined Contribution Plan ("DC Plan") (together, the "Plans"). Pursuant to local union

contracts, Mr. Bryant's employers were required to make contributions to the Plans on Mr. Bryant's behalf. Like many union members, Mr. Bryant's trade frequently required him to work for employers outside of his local jurisdiction, including in states such as Nevada and Colorado that are covered by the United Association Reciprocity Program for Pension Funds. To protect employees who work in multiple jurisdictions from losing benefits or being unable to accumulate them in one pension fund, the Reciprocity Program permitted the transfer of reciprocal contributions to the Plans on behalf of the participants working out of state. In many cases, the rates paid by out-of-state employers and transferred to the Plans exceeded those required to be contributed by Arizona employers under the Arizona collective bargaining agreements. Under the terms of the Reciprocity Program and the Plans, the full value of the out-of-state contributions would be prorated between the Plans at the current contribution rates.

In 2004, the Trustees of the Plans allegedly approved Amendment 1[1] to the pension Plans, which provided that, for employees on whose behalf reciprocal contributions were made at rates higher than those required under the collective bargaining agreements, any excess over the current hourly contribution rate would be paid into participants' individual accounts in the DC Plan and "credit for the full amount of such excess contributions shall be given to the participant." (Doc. 1 at 4.) Thus, upon adoption, excess contributions received by the Pension Plan on behalf of any DC Plan participant would have constituted accrued benefits for those participants in the DC plan. Amendment 1 was made retroactive to June 1, 2002. Plaintiff alleges that the Pension Plan failed to make contributions to the DC Plan as required by the terms of Amendment 1, and that the DC Plan and its administrators and trustees took no action to collect such contributions on behalf of the trust and deserving participants. As a result, participants on or after June 1, 2002 for whom excess contributions should have been made suffered

---

[1] For reasons of clarity and brevity only, the Court refers to these actions by the Trustees as "Amendments" rather than "Memoranda of Understanding." The Court recognizes that Defendants dispute the Plans were amended, within the meaning of ERISA, prior to "Amendment 2." (*See* Doc. 47 at 4.)

losses to their individual accounts, and all DC Plan participants lost out on the earnings that would have been realized had the excess contributions been properly allocated to the DC Plan and invested with the other pooled assets.

In May of 2004, the Plans were purportedly amended again ("Amendment 2") to provide that if a participant had not earned a full pension credit during a year that reciprocal contributions were paid on his behalf, all reciprocal contributions would be paid into the Pension Plan and no money would be paid into the DC Plan until after the participant had earned a full pension credit. As a result, excess contributions were withheld from the DC Plan for months longer than authorized under Amendment 1, without interest. Amendment 2 also permitted the Pension Fund to keep reciprocal contributions over and above those required to earn a full pension credit and, even where a full pension credit had been earned, the Pension Fund only allocated reciprocal contributions to the DC Plan on a percentage basis: the current contribution rate for the DC plan under Arizona contracts divided by the total hourly contribution to the Plans. Amendment 2 amended the Plans retroactively; the parties dispute whether it did so without notice to participants. Plaintiff contends that his and others' future benefits were diminished as a result, and that the Defendants' actions violated various provisions of the Plans and ERISA, and amounted to a breach of the Trustees' fiduciary obligation.

Under the terms of the DC Plan, participants each had an individual account for accounting purposes that included the contributions made on behalf of an employee, plus the annual investment yield determined by the Trustees to be applicable. On December 18, 2008, the DC Plan was amended retroactively to adopt a mid-year valuation date of November 30, 2008 rather than a single end-of-year valuation date as was prescribed by the terms of the DC Plan. Individual accounts are calculated each year based on the plan's investment yield as of the valuation date. Consequently, participants' accounts reflected a negative investment yield (-20.2782 percent) for the period between November 30, 2008 and May 31, 2009 (that would have been the year-end date), when the investment yield was again positive (9.2889 percent). Moreover, Defendants did not

1  add contributions received upon completion of the mid-year valuation to participants'
2  individual accounts, so the account balances of participants for whom contributions were
3  paid to Defendants between June 1, 2008 and November 30, 2008 were calculated using
4  the depressed investment yield rather than the year-end, positive investment income
5  adjustment, and participants' received reciprocal contributions were never credited with
6  the investment gains received during that time frame.

7        On August 24, 2007, Mr. Bryant began receiving installment payments from the
8  DC Plan. In January 2012, Defendants asserted that it had overpaid Mr. Bryant and
9  requested that he repay the alleged overpayments at eight percent interest. In July 2013,
10  Plaintiff filed in the instant action (Doc. 1, *amended by* Doc. 21) and now seeks class
11  certification on behalf of himself and similarly situated participants in the Plans for
12  violations of ERISA, for miscalculations of pension contributions in accordance with the
13  terms of the Plans, resulting in a loss of entitled benefits for participants, and for breaches
14  of the fiduciary duty owed to the putative plaintiff class by Defendants. (Doc. 44.)

15                              **ANALYSIS**

16  **I.     Legal Standard**

17        Class certification under Rule 23 is a two-step process. First, a plaintiff must
18  demonstrate that four requirements of Rule 23(a) are satisfied: numerosity, commonality,
19  typicality, and adequacy of representation. Fed. R. Civ. P. 23(a). Second, a plaintiff must
20  establish that at least one of the bases for certification in Rule 23(b) is met. Fed. R. Civ.
21  P. 23(b). The party seeking certification bears the burden of demonstrating that it has met
22  all of these requirements, and "the trial court must conduct a 'rigorous analysis'" to
23  determine whether it has met that burden. *Zinser v. Accufix Research Inst.*, 253 F.3d
24  1180, 1186 (9th Cir. 2001) (quoting *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227,
25  1233 (9th Cir. 1996)).

26        In determining whether to certify a class action, the district court may not inquire
27  into the merits of the class representatives' underlying claims. *Eisen v. Carlisle &*
28  *Jacquelin,* 417 U.S. 156, 177–78 (1974). The district court is required to take the

1   substantive allegations of the complaint as true. *In re Coordinated Pretrial Proceedings*
2   *in Petroleum Prods. Antitrust Litig.*, 691 F.2d 1335, 1342 (9th Cir. 1982) (internal
3   citation omitted). However, the court also is required to consider the nature and range of
4   proof necessary to establish the allegations in the complaint. *Id.*

5   **II.     Analysis of Law**

6           Plaintiff proffers two classes and one sub-class for certification. Class 1 represents
7   all DC plan participants who had accrued benefits on or after June 1, 2002 and their
8   eligible spouses and beneficiaries. (Doc. 44 at 13; Doc. 48 at 3 n.1.) Sub-Class 1 includes
9   all Class 1 members who had an account between June 1, 2002 and June 24, 2004, and
10  for whom excess contributions were received by the Pension Plan on or after June 1,
11  2002. (Doc. 48 at 3–4 n.1.) Class 2 comprises all participants in the DC Plan as of
12  November 30, 2008 (the date specified by the mid-year valuation amendment) for whom
13  contributions were received by Defendant Plans between June 1, 2008 and November 30,
14  2008 and their eligible spouses and beneficiaries. (Doc 44 at 13.)

15          **A.     Rule 23(a)(1): Numerosity**

16          The first prerequisite of Rule 23 is that the class be "so numerous that joinder of
17  all members is impracticable." Fed. R. Civ. P. 23(a)(1); *see also See Jordan v. Los*
18  *Angeles County*, 669 F.2d 1311, 1319 (9th Cir. 1982) *vacated on other grounds*
19  *by County of Los Angeles v. Jordan*, 459 U.S. 810 (1982) ("A proposed class of at least
20  forty members presumptively satisfies the numerosity requirement."). Here, the
21  jurisdiction of the Plans extends throughout Arizona and includes participants in New
22  Mexico, California, and Nevada. (Doc. 44 at 14.) Hundreds of DC Plan participants on
23  whose behalf reciprocity contributions were made between June 1, 2002 and June 24,
24  2004 were affected by Amendment 2. (*See* Docs. 51 and 52.) It stands to reason that
25  putative Class 1, which includes the aforementioned DC Plan participants, is even more
26  numerous. Moreover, hundreds of DC Plan participants received reciprocity contributions
27  during the six month period preceding Defendants' mid-year valuation and allegedly did
28  not have those contributions credited. (Doc. 44, Ex. 4 at 4.) Defendants do not contest

that numerosity is satisfied as to any of the proposed classes.

## B.    Rule 23(a)(2): Commonality

A Rule 23 class is certifiable only if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). For the purposes of Rule 23, even a single common question is sufficient. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011) (internal quotations omitted). The common contention, however, "must be of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 2551. "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but rather the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (internal citation omitted). "Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Id.*

Plaintiff alleges that Defendants' enactment of Amendment 2 violated §§ 1054(g) and (h) of ERISA by significantly decreasing Plan participants' "accrued benefits" without adequate notice. *See* 29 U.S.C. §§ 1054(g), (h). Plaintiff also argues that Defendants' allocation of reciprocal contributions under Amendments 1 and 2 and their valuation of the accounts of participants who received such reciprocal benefits between June 1, 2008 and November 30, 2008 were contrary to the terms of the Plans and constituted a breach of Defendants' fiduciary obligations to Plan participants. Plaintiff contends that these injuries entitle the Plaintiff classes to various injunctive and monetary remedies, such as the reallocation of affected reciprocal contributions as well as the payment of benefits wrongfully withheld. *See id.* § 1132(a)(1), (3).

With respect to Sub-Class 1—participants for whom excess contributions were received by the Pension Plan between June 1, 2002 and June 24, 2004— and Class 1, all putative class members' right to relief under §§ 1054(g) and (h) arises out of the same alleged misconduct. Whether class members had accrued rights and benefits under Amendment 1 and whether the Trustees violated the terms of the Plans and ERISA by

failing to provide adequate notice prior to the adoption of Amendment 2 is a question of law common amongst the members of the proposed class sufficient to meet the requirements of Rule 23(a)(2). Similarly, the determination of whether Defendants' implementation of Amendment 2 amounted to a breach of fiduciary duty would bear equally on each member of Class 1 and Sub-Class 1's claims.

Defendants argue that some members of the proposed Class 1 were not entitled to notice of Amendment 2 under ERISA because they were not "participants" as defined in the Rules and Regulations of the Arizona Pipe Trades. (*See* Doc. 47 at 5–6.) However, the availability of a defense to the merits of some class members' claims does not defeat the existence of a common question of law or fact within the meaning of Rule 23; rather, the defense itself may be a common question, the resolution of which would be equally applicable to each member of Sub-Class 1. Rule 23 does not require that class certification be denied when a defendant may be able to assert unique defenses against putative class members. *See Cameron v. E.M. Adams, & Co.*, 547 F.2d 473, 478 (9th Cir. 1976) ("[T]he presence of individualized issues of compliance with the statute of limitations . . . does not defeat the [presence] of the common questions."). Thus, Defendants have not demonstrated that the questions concerning Sub-Class 1 are of such an individualized nature that class treatment would be inappropriate.

Defendants contend that Class 1 is too broadly defined in the record to render the questions common to the §§ 1054(g) and (h) claims suitable for resolution as to every member. Class 1 comprises all DC Plan participants on or after June 1, 2002 and their eligible spouses and beneficiaries, regardless of whether they had reciprocal contributions paid into their Plan accounts. As a result, Class 1's sweep is such that it also encompasses individuals who were not actively accruing benefits before Amendment 2 was enacted. ERISA § 204(g) prohibits the decrease of accrued benefits by amendment and § 204(h) states in part that "[a]n applicable pension plan may not be *amended* so as to provide for a significant reduction in the rate of future benefit accrual unless the plan administrator provides the notice described in paragraph (2) to each applicable individual." 29 U.S.C.

§ 1054(g), (h)(1) (emphasis added). Thus, the statute, on its face, only regulates amendments to plans. If plan participants join a plan after it has been amended, they have not had their rate of future benefit accrual reduced and they are not entitled to notice under the statute. Plaintiff's proposed Class 1 includes individuals who became participants in the DC Plan after the date Amendment 2 was allegedly adopted. Because these individuals have no cause of action under § 204(g) or (h), Defendants argue, Plaintiff's proposed class is overbroad.

Nevertheless, Plaintiff sufficiently alleges that even those DC Plan participants who were not affected by Amendment 1 were harmed by Defendants' breach of fiduciary duty in implementing Amendment 2 because the understatement of certain participants' individual account balances (1) diminished the entire corpus of the DC trust—that is by understating or artificially withholding for an excessive period from the DC trust that percentage of the reciprocal contributions that should have been allocated to it under Amendment 1, the Defendants reduced the investment yields for all DC Plan participants; and (2) "required all participants to shoulder a greater portion of the expenses" associated with maintaining the Plans. (Doc. 44 at 8.) Thus, Plaintiff argues, aggregating claims is still appropriate because every class member had a vested interest in the aggregated trust assets, which should have included contributions that Plaintiff alleges were improperly withheld by the defined benefit plan and, therefore, has suffered a cognizable injury, even if the extent of that injury may be subject to individual variation. Moreover, if the administrative fees associated with maintaining the DC Trust were distributed amongst Plan participants proportionately to the amount of each participant's account balance, then it follows that a misallocation of individual benefits could have led to an inaccurate apportionment of the Trust's operating costs as well. At the hearing on this matter on December 8, 2014, Defendants conceded that the disproportionate deduction of trust expenses may well constitute a violation of ERISA for which the statute authorizes private suit. Consequently, the claims of Class 1 and Sub-Class 1 are sufficiently common such that the class action mechanism would facilitate their resolution.

As Class 2 is limited to participants who received reciprocal contributions over a six month period between the 2008 mid-year and end-of-year valuation dates the Court finds that Class 2 is also sufficiently tailored to generating common questions for litigation. For instance, whether Defendants breached the fiduciary duties they owed to the prospective Plaintiff classes and whether they miscalculated participants' individual account balances by not including employer contributions at the mid-year valuation date are central questions all class members seek to resolve in this litigation. Although the effect of Defendants' actions on the account balances of Plan participants may vary amongst class members, resolution of the common legal questions in Counts II and III would facilitate disposition of the all class members' claims.

Defendants advance an additional argument that all classes are insufficiently defined because they include DC Plan participants who cashed out of the Plan by receiving a payment of the entire balance in their account within the time periods covered by the proposed classes, and thus lack standing to bring a civil action against former employers for alleged violations of ERISA because they are no longer members of any statutorily-defined Plan. (Doc. 47 at 11.) ERISA permits "participants" to bring civil actions for relief against employers who have violated the substantive provisions of the statute. *See* 29 U.S.C. § 1132(a). ERISA further defines "participant" as "any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization. . . ." 29 U.S.C. § 1002(7). In *LaRue v. DeWolff*, the Supreme Court clarified that "[a] plan 'participant,' as defined by . . . § 1002(7), may include a former employee with a colorable claim for benefits." *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248 (2008). The plaintiff in *LaRue* sued under ERISA after his employer failed to make certain changes to the investments in his retirement plan account, resulting in a loss of account value. *Id.* at 1022–23. After the Court granted certiorari, the defendants filed a motion to dismiss, arguing that the case was moot because the plaintiff had withdrawn all

his funds from the plan. *Id.* at 1026 n.6. The Court held that the case was not moot for the reasons quoted above. *Id.* Both the plaintiff in *LaRue* and Mr. Bryant have alleged that the Defendants' violation of ERISA resulted in the receipt of fewer benefits than those to which he was legally entitled had defendant not breached his fiduciary duty.

In addition, in *Harzewski v. Guidant Corp.*, 489 F.3d 799 (7th Cir. 2007), adopted by the Ninth Circuit in *Vaughn v. Bay Environmental Management, Inc.*, 567 F.3d 1021, 1027 (9th Cir. 2009), the court held that, despite having "cashed out" of the plan, plaintiffs were still "participants" because they may become eligible to receive plan benefits by winning a money judgment against defendants. *Harzewski*, 489 F.3d at 804. Under this definition of "participant" and plan "benefit," the Plaintiff class here similarly has standing to recover losses occasioned by Defendants' breach of fiduciary duty that allegedly reduced the amount of their benefits.

With respect to Count IV of the Complaint, however, the Court finds Plaintiff's claims not sufficiently common with any of the proposed classes to support certification. Plaintiff alleges that, after requesting documents concerning the valuation of his Individual Accounts, Defendants provided "*Mr. Bryant* with inconsistent and differing information concerning the amount of . . . benefits and the amount that they claimed Mr. Bryant was purportedly overpaid. . . ." (Doc. 21 at 9 (emphasis added).) Thus, on the face of the pleadings, Count IV—which alleges violations of ERISA's claims procedure and disclosure requirements—amounts to an individual claim for relief and not one suitable to class resolution.

## C. Rule 23(a)(3)–(4): Typicality & Adequacy

In certifying a class, courts must find that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed R. Civ. P. 23(a)(3). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is

not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Id.* (internal citation omitted). While commonality examines the relationship of facts and legal issues common to class members, typicality focuses on the relationship of facts and issues between the class and its representatives. *Wal-Mart Stores, Inc. v. Dukes*, 509 F.3d 1168, 1184 n.12 (9th Cir. 2007).

Meanwhile, the adequacy of representation prong requires two legal determinations: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members; and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class? *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000). This inquiry has a tendency to overlap with the commonality and typicality criteria of Rule 23(a). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 n.20 (1997). These requirements serve to ensure that "the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158 n.13 (1982). A named plaintiff does not satisfy the typicality or adequacy requirements if he is subject to unique defenses that threaten to become the focus of the litigation. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011).

As to Sub-Class 1 and Class 2, Plaintiff's claims are based on the same legal and remedial theory as the claims of the other members of the proposed class. In response, Defendants assert a number of defenses against Plaintiff, including the failure to exhaust administrative remedies and the expiration of the statute of limitations on Plaintiff's claims. (*See* Doc. 47 at 12–15.) However, these purported defenses are not unique in such a way that they would create a distraction or become a major focus of the litigation. *See Ellis*, 657 F.3d at 984. In *Medearis v. Oregon Teamster Employers Trust*, for example, the court reasoned that the named plaintiff's failure to exhaust administrative remedies before pursuing an ERISA class action did not preclude class certification. CV. 07-723 PK, 2008 WL 4534108 at *7 (D. Or. Oct. 1, 2008) (accumulating cases). The *Medearis*

court found that "because it [did] not appear that any of the potential class members have exhausted their administrative remedies, the named plaintiff's failure to exhaust [was] not a defense unique to [him]." *Id.* Here, both Mr. Bryant's alleged failure to exhaust administrative remedies and the statute of limitations "are typical of [the defenses] that [Defendants] may raise against other members of the class," thus satisfying the requirement for typicality rather than undermining it. *Id.* at 535 (internal quotation marks omitted). There is also nothing to suggest that Mr. Bryant would be an inadequate representative of Class 2's interests.

However, there are some potential and perhaps significant conflicts of interest within Class 1. The contested Amendments affected the distribution and calculation of the pension credits of Plan participants; therefore, the interests of the class members who benefited from Amendment 2 irreconcilably conflict with the interests of class members who would benefit from the Court's disregard of Amendment 2. It seems likely that some class members would prefer to receive the benefits afforded them by Amendment 2, with its alleged ERISA violations, than those that they would have received under Amendment 1. However, Plaintiff notes that ERISA § 204(h) expressly provides that "in the case of any egregious failure to meet any requirement of this subsection with respect to any plan amendment, the provisions of the applicable pension plan shall be applied as if such plan amendment entitled all applicable individuals to the greater of (i) the benefits to which they would have been entitled without regard to such amendment, or (ii) the benefits under the plan with regard to such amendment. 29 U.S.C. § 1054(h)(6)(A). Intentional violations of ERISA or violations that deprive "most of the individuals with most of the information they are entitled to receive" amount to "egregious failures," among other things. *Id.* § 1054(h)(6)(B). Participants' ability to elect the better of the two amendments would eliminate the potential conflict of interest between class members. *Cf. CIGNA Corp. v. Amara*, 131 S. Ct. 1866, 1881 (2011) (holding that ERISA authorizes reformation of a plan as an equitable remedy for improper notice under ERISA §204(h)). Moreover, Plaintiffs' claims center on requests for equitable remedies; any monetary

relief that might be available to the Plaintiff class in the form of restored benefits would be incidental to the Court's declaration that Amendment 2 is invalid and enjoining its enforcement. Thus, there is nothing to suggest that Bryant would be an inadequate class representative for members of Class 1 who are not members of Sub-Class 1, even though he states claims for benefits the receipt of which would adversely affect other class members. For the foregoing reasons, the Court finds that Plaintiff has satisfied the requirements of Rule 23(a) with respect to Classes 1 and 2 as well as Sub-Class 1. However, if at any point it becomes clear to the Court that the Plaintiffs are primarily seeking remuneration, and that granting such relief would harm the interests of other class members or otherwise negate the utility of the class action mechanism for resolving these claims, Defendants may petition the Court for decertification. *See Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) ("Even after a certification order is entered, the judge remains free to modify it in light of subsequent developments in the litigation.").

**D.    Rule 23(b)**

In addition to meeting the requirements under Rule 23(a), class action plaintiffs must also establish that one or more of the grounds for maintaining the suit as a class action are met under Rule 23(b): (1) there is a risk of substantial prejudice from separate actions; (2) declaratory or injunctive relief benefitting the class as a whole would be appropriate; or (3) common questions of law or fact predominate and the class action is superior to other available methods of adjudication. Fed. R. Civ. P. 23(b). Plaintiff seeks certification of the classes under Rules 23(b)(1) and (2), and, alternatively, under Rule 23(b)(3). The Defendants argue that certification is inappropriate under all three prongs.

**i.    Rule 23(b)(1)**

Rule 23(b)(1) provides for class litigation if separate actions by individual class members would create a risk of "inconsistent or varying adjudications with respect to individual class members." Fed. R. Civ. P. 23(b)(1)(A). Here, the members of all classes all allegedly suffered the same ERISA violations and the same lack of notice. If successful on the merits, they will be entitled to the same type of relief. In addition, the

1   theory underlying the alleged breach of fiduciary duties is the same on which Counts I

2   and II are based. Further, adjudication of Plaintiff's claims by different courts carries a

3   substantial risk of varying orders, particularly given the injunctive nature of the relief

4   sought. *See, e.g.*, *In re Citigroup Pension Plan ERISA Litig.*, 241 F.R.D. 172, 179–80

5   (S.D.N.Y. 2006) (applying Rule 23(b)(1) in the context of an ERISA § 204(h) action and

6   noting that Rule 23(b)(1)(A) "speaks directly to ERISA suits"). Thus, certification of

7   Class 1, 2 and Sub-Class 1 is appropriate under 23(b)(1).

8                **ii.**      **Rule 23(b)(2)**

9         Rule 23(b)(2) allows class certification when "the party opposing the class has

10   acted or refused to act on grounds generally applicable to the class, thereby making

11   appropriate final injunctive relief or corresponding declaratory relief with respect to the

12   class as a whole." Fed. R. Civ. P. 23(b)(2). The primary remedy sought under Count I is a

13   declaration that Amendment 2 was ineffective. Thus, since the Plaintiff alleges that the

14   Plan "acted . . . on grounds generally applicable to the class," declaratory relief with

15   respect to the whole class may be appropriate. Although the ultimate outcome may also

16   include remuneration to class members, certification of a class under Rule 23(b)(2) is still

17   permissible because such monetary damages would be "merely incidental to [the]

18   primary claim for [declaratory] relief." *Probe v. State Teachers' Retirement Sys.*, 780

19   F.3d 778, 780 (9th Cir. 1986). Thus, Class 1 and Sub-Class 1 may also be properly

20   certified under Rule 23(b)(2) to maintain the claims alleged in Counts I.

21                **iii.**     **Rule 23(b)(3).**

22         Class certification is also appropriate under Rule 23(b)(3). Rule 23(b)(3) requires

23   that "[common] questions of law or fact . . . predominate over any questions affecting

24   only individual members" and "class action is superior to other available methods for

25   fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Plaintiff has

26   established that common questions of law and fact would predominate under Counts I, II

27   and IV as those counts relate to Classes 1, 2 and Sub-Class 1. These claims are dominated

28   by the determination of whether the amendment was invalid, whether benefits were

miscalculated, and whether passing the challenged amendments breached the Plan's fiduciary duty to plan participants. Although individual issues arise in the calculation of what damages flow from an invalid amendment, the aforementioned questions dominate the resolution of the case, and the Ninth Circuit recognizes that "the amount of damages is invariably an individual question and does not defeat class action treatment." *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1026 (9th Cir. 2011) (quoting *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1091 (9th Cir. 2010)). Further, in answering these questions, all the claims of all class members are resolved. For this reason, certification is also proper under FRCP 23(b)(3).

## CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Class Certification (Doc. 44) is **GRANTED IN PART AND DENIED IN PART.** The following classes are certified under Federal Rule of Civil Procedure 23 for prosecution of Counts I, II, and III.

1.      Class 1: All DC plan participants who had accrued benefits on or after June 1, 2002 and their eligible spouses and beneficiaries. (Counts I, II, III)

2.      Sub-class 1: All Class 1 members who were DC Plan participants between June 1, 2002 and June 24, 2004, and for whom excess contributions were received by the Pension Plan on or after June 1, 2002. (Counts I, II, III)

3.      Class 2: All participants in the DC Plan as of November 30, 2008 for whom contributions were received by the Plans between June 1, 2008 and November 30, 2008 and their eligible spouses and beneficiaries. (Counts II, III)

**IT IS FURTHER ORDERED** that Wayne Bryant is hereby appointed as the Class Representative.

/ / /

/ / /

/ / /

/ / /

/ / /

1

**IT IS FURTHER ORDERED** that the law firm of Martin & Bonnett P.L.L.C. is

2  appointed as Class Counsel.

3

Dated this 22nd day of January, 2015.

4

5

_____

Honorable G. Murray Snow

6  United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28