**SUSAN MARTIN (AZ#014226)**
**JENNIFER KROLL (AZ#019859)**
**MARTIN & BONNETT, P.L.L.C.**
1850 N. Central Ave. Suite 2010
Phoenix, Arizona 85004
Telephone: (602) 240-6900
smartin@martinbonnett.com
jkroll@martinbonnett.com

Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Wayne Bryant, on his own behalf and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>Pension Plan for the Arizona Pipe Trades Pension Trust Fund; Board of Trustees of the Arizona Pipe Trades Pension Trust, Plan Administrator of the Pension Plan for the Arizona Pipe Trades Pension Plan; Arizona Pipe Trades Defined Contribution Plan; Board of Trustees of the Arizona Pipe Trades Defined Contribution Plan, Plan Administrator of the Arizona Pipe Trades Defined Contribution Plan<br><br>Defendants. | Case No.: 2:13-cv-01563-GMS<br><br>**MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS AND CASE CONTRIBUTION AWARD**<br><br>**(Fairness Hearing to be held November 19, 2015 at 2:00 p.m.)** |

Pursuant to ERISA §502(g), 29 U.S.C. §1132(g), Fed. R. Civ. P. 23, LR Civ 54.2, the Order of this Court preliminarily approving the parties' class action settlement agreement, (Doc. 103),[1] Plaintiff and Class Counsel respectfully request that the Court grant Class Counsel's request for fees and costs to be paid from the common benefit fund created by the Settlement Agreement. The Settlement Fund is $5,800,000. Plaintiff seeks an award of attorneys' fees in the amount of 25% of the Settlement Fund which is $1,450,000. Plaintiff also seeks Court approval for Defendants to reimburse Class Counsel their costs and expenses incurred in prosecuting this action in the amount of $90,143.02 to be paid separately by Defendants and not from the Settlement Fund in accordance with the agreement. Plaintiff and Class Counsel also request that the Court approve the Case Contribution Award to Mr. Bryant of $25,000 to be paid from the Settlement Fund for the significant time and efforts he expended on behalf of the classes in this case that helped achieve the Settlement Agreement.

This motion is supported by the Declaration of Susan Martin and exhibits thereto ("Martin Decl."), the Declaration of Plaintiff's Expert Julia Allen Miessner ("Miessner Decl.") and the Declaration of Wayne Bryant ("Bryant Decl.") submitted with Plaintiff's Motion for Final Approval of Settlement Agreement and the record before this Court.

## MEMORANDUM OF POINTS AND AUTHORITIES

The Settlement is an excellent result for the Class Members. Class Counsel's efforts helped to achieve a Settlement Fund that, as set forth in the accompanying motion for final approval and Miessner Decl., is approximately 89.3% of Class Member losses computed using a very favorable measure of lost earnings. If Class Counsel's application for attorneys' fees is granted and Plaintiff's application for a case contribution award is approved, each Class Member will receive a net payment of approximately 66.6% of their losses. Class Members will also obtain significant prospective relief governing the Plans' procedures for notice, allocation, transfer and crediting of reciprocal contributions between the DB and DC Plans.

---

[1] The capitalized terms have the meaning set forth in the Parties' Agreement. Doc. 101-1.

As set forth in the accompanying Bryant Decl. and Martin Decl. ¶27, Mr. Bryant was an active participant in the prosecution of this matter from start to finish. He investigated the amendments, the valuation of his reciprocal contributions and notices to other fund participants, which was no easy task for a non-practitioner. He also agreed to pursue this case on a class basis to benefit others despite the risk that it would take longer to prosecute his own claims and likely make resolution of his individual claims more difficult. His efforts in this case substantially benefited the Class Members. Given the time he expended and the results achieved, a case contribution award of $25,000 is reasonable and just.

## BACKGROUND

Class Counsel respectfully refers the Court to the Joint Motion for Preliminary Approval 1-7, Doc. 101, and to Plaintiff's motion for final approval of the Settlement, at pp. 1-7, filed concurrently for a detailed description of the background, claims and litigation preceding the Settlement Agreement.

## SUMMARY OF THE SETTLEMENT

Class Counsel's efforts in this case produced exceptional results. A summary of the Settlement is set forth in the Joint Motion for Preliminary Approval, Doc. 101, at pp. 5-7, incorporated herein by reference. All of the Settlement Benefits were calculated by Class Counsel's expert forensic accountant using methodologies and interest rates that were used in calculating losses for the Plaintiff's expert reports in this matter. Miessner Decl. ¶¶4-5, 6-8, 10-16, 17-20; Martin Decl. ¶¶13, 15.  The 859 Class Members will share in a recovery that includes payment of a substantial percentage of the losses they suffered with very favorable interest. If the Fee Application and Case Contribution award are granted, Class Members will receive approximately 66.6% of their losses, averaging approximately $5,034 each.[2] The highest individual recovery is over $52,000. *See* Revised Plan of Allocation. The Settlement Agreement also provides significant prospective relief for all Class Members and all DB and DC Plan participants including revised disclosures, notice,

---

[2] If the 37 Class Members who have no damages under either claim (but who will still receive prospective relief) are excluded from the average, the average recovery per Class Member is approximately $5,261.

3

crediting and transfer of reciprocal contributions going forward. These are excellent results for any settlement, let alone a complex ERISA class settlement.

The Class Notice was mailed in August 2015, two months prior to this motion. On the same date, the class action claims administrator launched a toll free phone number and a website, both of which are identified in the Notice, providing additional information. Class Counsel's phone number, address and email address are also listed in the Notice. Only a handful of the Class Members have not yet been located (which will not impact their ability to receive their Settlement Benefits which will be in their DC Plan accounts and which will never revert back to Defendants.). The Notice clearly described the Settlement and disclosed the amounts that would be sought in this Fee Application. Each Class Member was advised of the individual recovery they would receive under the Settlement Agreement if this Fee Application is approved. To date, no Class Member has objected. Class Counsel has spoken to some of the Class Members by phone and the response to the settlement has been favorable. Martin Decl. ¶ 17. No Class Member has indicated that he or she is displeased by the Settlement. *Id.*

**I.    CLASS COUNSEL'S REQUEST FOR ATTORNEYS' FEES AND COSTS IS FAIR AND REASONABLE**

**A. An Award of Attorneys' Fees from the Common Fund is Appropriate**

Class Counsel respectfully requests the Court to exercise its discretion to award the attorneys' fees requested here in the amount of 25% of the common fund. Class Counsel also requests that the Court approve the payment of costs of $90,143.02, which will not be paid out of the Settlement Funds but will be paid separately by Defendants. The Ninth Circuit has long recognized courts have "the discretion to choose between the lodestar and percentage methods" of calculating fees in common fund cases. *See Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989). In *Graulty*, the Ninth Circuit held that "it is well settled that the lawyer who creates a common fund is allowed an extra reward, beyond that which he has arranged with his client, so that he might share the wealth of those upon whom he has conferred a benefit." *Id.* at 271; *see also In re Wash. Pub. Power Supply*

*Sys. Sec. Litig.,* 19 F.3d 1291, 1300 (9th Cir. 1994) ("those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it.").

Common fund attorneys' fees awards under ERISA and other similar statutes are well established in this Circuit and elsewhere. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015) (affirming district court's attorneys' fee award of 25% of the common fund); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (ERISA case); *Staton v. Boeing Co.*, 327 F.3d 938, 967 (9th Cir. 2003); *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1374-77(N.D. Cal. 1989) (collecting cases and describing benefits of the percentage of the common fund method over the lodestar method); *In re Omnivision Technologies, Inc.*, Nos. 04-2297, 2007 WL 4293467, *8 (N.D. Cal. Dec. 6, 2007); *Berger v. Xerox Corp. Ret. Income Guar. Plan,* No. 00-584, 2004 WL 287902 (S.D. Ill. Jan. 22, 2004). *See also* Mark Berlind, "Attorney's Fees under ERISA: When is an Award Appropriate?" 71 *Cornell L. Rev.* 1037, 1060-61 (1986) ("Applying the common benefit doctrine reflects the statute's purpose and enables qualifying potential plaintiffs, regardless of their financial status, to bring ERISA actions.").[3]

**B.   Factors for Awarding Fees in the Ninth Circuit and Enumerated in LR Civ 54.2(c)(3) Support a 29% Common Fund Fee Award**

In determining the amount of the fee to be awarded in the Ninth Circuit, courts look at a number of factors. These factors are similar to the factors the courts used to evaluate settlements:

The Ninth Circuit has approved a number of factors which may be relevant

---

[3] Fees are appropriate in ERISA cases under ERISA § 502(g) and Plaintiff would be entitled to fees under the factors set forth in *Hummell v. S.E. Rykoff & Co.*, 634 F. 2d 446, 453 (9th Cir. 1980), which are: 1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions. Here, Plaintiff has litigated significant legal issues regarding ERISA that will benefit all Plan participants who receive Reciprocal Contributions. An award of fees would deter others from acting in the same manner. Defendants' conduct in enacting the amendment despite the knowledge that it could be a prohibited transaction shows their culpability and the establishment of the Settlement Fund demonstrates that Defendants have the ability to satisfy an award of fees.

> to the district court's determination: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases.

*Knight v. Red Door Salons, Inc.*, No. 08-01520 SC, 2009 WL 248367, at *5 (N.D. Cal. Feb. 2, 2009) (citing *Vizcaino*, 290 F.3d at 1048-50). LR Civ 54.2(c)(3) also provides several factors to be considered in evaluating a fee award. Each of these factors warrant a 25% common fund recovery in this case.

The 25% sought by Class Counsel is the Ninth Circuit's benchmark for attorneys' fees in common fund class actions, although the benchmark percentage may be adjusted when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors. *Six Mexican Workers v. Arizona Citrus Growers,* 904 F.2d 1301, 1311 (9th Cir. 1990); *Vizcaino,* 290 F.3d at 1048-50 (explaining the rate selected must be supported by findings that take into account all of the circumstances of the case). In the Ninth Circuit, "in most common fund cases, the award exceeds that benchmark." *Knight v. Red Door Salons, Inc.,* No. 08–01520 SC, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009); *see also Barbosa v. Cargill Meat Solutions, Corp.,* 297 F.R.D. 431 (E.D. Cal. 2013)(in awarding a 33% fee the Court relied on 9 other common fund cases awarding between 33.3% and 31.25% attorney's fees); *In re Apollo Group Inc. Securities Litigation,* 2012 WL 1378677 (D.Ariz. 2012) (ordering an attorney fee award of 33.3%); *In re Pacific Enterprises Sec. Litig.,* 47 F.3d 373, 379 (9th Cir. 1995) (affirming award equal to 33% of the common fund); *Adoma v. University of Phoenix,* 913 F.Supp.2d 964 (E.D. Cal 2012)(awarding 29% fee). Moreover, in the Ninth Circuit, class cases with recoveries under $10 million will often result in result in fees above 30%. *See Van Vranken v. Atlantic Richfield Co.,* 901 F.Supp. 294, 297-98 (N.D.Cal.1995) ("[m]ost of the cases Class Counsel have cited in which high percentages such as 30-50 percent of the fund were awarded involved relatively smaller funds of less than $10 million", citing cases); *Craft v. Cnty. of San Bernardino*, 624 F. Supp. 2d 1113, 1127 (C.D. Cal. 2008)(same); *see also In re Ampicillin Antitrust Litig.*, 526 F. Supp. 494, 498 (D.D.C. 1981) (awarding 45% of $7.3 million settlement fund).

The factors set forth in the Ninth Circuit cases and the Local Rule that support the reasonableness of the 25% fee award requested by Class Counsel are briefly summarized below:

(1) <u>The results obtained and the amount of money and the value of the rights involved</u>: "The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award." *Knight*, 2009 WL 248367, at *5. In this case, Class Counsel's efforts were exceptional. Class counsel defeated vigorous efforts by Defendants to defeat class certification and to dismiss or limit the claims. Class member discovery was also extensive. Plaintiff's discovery efforts resulted in production and review of more than 70,000 pages of documents and hundreds of spreadsheets. Martin Decl. ¶11.

Class Counsel's efforts resulted in a substantial settlement fund of $5,800,000 for the benefit of 859 Class Members. This amount is without factoring in the significant prospective relief for all Class Members. Class Members with losses as calculated by Plaintiff's expert will receive 89.3% of their damages under the Settlement prior to an allocation for attorneys' fees and the case contribution award calculated on the basis of the most favorable methodology. Miessner Decl. ¶¶8, 17-19. If Defendants' argued for methodology with respect to earnings under the Amendment 1 Methodology had prevailed, the Settlement Fund would be in excess of 100% of Class Members' losses. *Id.* ¶¶14-16, 20. If the motion for attorneys' fees and case contribution award is approved, the Class Members will receive recoveries of 66.6% of their losses. *Id.* ¶¶19.

These results are exceptional and far in excess of the amounts commonly seen in class action settlements. In *Knight*, for example, in granting class counsel's request for 30% of fees plus reimbursement of costs, the court found that a settlement that provided of 50% of the possible damages (before any fee award) was "a substantial achievement" and held that the "results achieved weigh in favor of granting the requested 30% fee." *Id.* at *5, 7-8; *see also In re Heritage Bond Litig.,* No. 02–ML–1475 DT, 2005 WL 1594403. *19 (C.D.Cal. June 10, 2005)(cataloging cases where courts have increased fee awards to 33.3% based on "exceptional" results where class members received between 10% and 23% of net

damages).

(2) <u>The novelty and difficulty of the questions presented:</u> This case involves difficult issues related to technical and complex areas of ERISA. As set forth in the accompanying Martin Decl. and other accompanying declarations, ERISA is a complex area or the law and this case involved the understanding of and application of amendments to the Plans and ERISA statutory requirements spanning several years. There were recordkeeping issues with a prior administrator and there had been a change in administrators that resulted in other issues with the Plans' records. Martin Decl. ¶ 11; Miessner Decl. ¶¶ 4-5. The Plans' auditor and accountant had also changed firms resulting in some additional difficulty in obtaining records. *Id.* In the ERISA context courts have generally awarded higher percentages than the 25% starting point. *See Berger v. Xerox Corp. Ret. Income Guar. Plan*, 2004 WL 287902 (S.D.ILL 2004) (awarding a 29% fee of a $239 million dollar settlement fund plus $ 300,000.00 in costs and expenses in an ERISA case, noting the fee award requested was "**at or below the market rate for this and similar litigation**") (emphasis added)); *see also Vizcaino*, 290 F.3d at 1050 (affirming an attorneys' fee award of 28% in a "megafund" ERISA common fund case).[4]

This case also involved an understanding of complex class litigation. Discovery related to Defendants' practices and procedures relative to the Plans including the crediting and transfer of contributions, wading through tens of thousands of pages of documents and spreadsheets, including documents created by a prior third party pension plan administrator, and working with an actuary and a forensic accountant to investigate the claims, analyze Defendants' documents and spreadsheets and create and review damages calculations for each Class Member.

(3) <u>The skill requisite to perform the legal service properly:</u> Class Counsel is one of a small number of plaintiffs' attorneys who have the extensive knowledge, skill and experience, in the complex pension plan provisions of ERISA who are willing to represent

---

[4] "Megafund" cases like *Vizcaino* usually involve recoveries of $75-$200 million and usually involve lower attorney fee awards. *See Van Vranken, supra* at 297-298.

8

plaintiff pension plan participants. Martin Decl. ¶ 15; *see also* Ex. C thereto Pauk Decl. Decl. ¶12; Lewis Decl. ¶ 14; Springer-Sullivan Decl. ¶ 8; Renaker Decl. ¶7.  Defendants in this case include multi-employer pension plans that had substantial funds for defense as a result of a fiduciary liability insurance policy. The plans and their trustees retained ERISA knowledgeable, and well-respected firms for the defense of this case.

(4) The risk and "undesirability" of the case: Not only are there are many difficulties inherent in the prosecution of ERISA actions, there are high costs involved in prosecuting these actions, largely because of the need for experts. This case, like many ERISA cases, involved complex technical and statutory issues and defenses all of which posed risks to Plaintiff. The Named Plaintiff came to Class Counsel because Defendants were claiming he was overpaid and were seeking payment of interest at 8%. Bryant Decl. ¶6; Martin Decl. ¶10. Plaintiff did not believe he was overpaid but had great difficulty obtaining the relevant facts. *Id.* Class Counsel was able to turn Defendants' claim for overpayment into a substantial Settlement Fund that will benefit 814 Class Members.

Defendants also vigorously argued that class certification was inappropriate for reasons including alleged conflicts among Class Members. Doc. 61, at p. 12. Defendants also argued that Plaintiff's requested remedies were inappropriate. Miessner Decl. ¶10, 13-20. This case was also risky and "undesirable" because the case stemmed from interpretation of amendments that were retroactively effective over a decade before suit was brought. Defendants asserted in opposition to the motion for class certification that Plaintiff's claims were time–barred and later that all Class Members' claims should also be time-barred. Doc. 26 p. 10 ¶2. In addition, Defendants argued Plaintiff failed to exhaust administrative remedies. Some claims also implicated the standard of review in ERISA benefits claims. Although Plaintiff vigorously disagreed that deference should apply, the risk that the Court would apply a deferential review in the upcoming summary judgment briefing also made the case risky for Plaintiff's counsel. *See* Donald T. Bogan, *ERISA: Re-thinking Firestone in Light of Great-west--implications for Standard of Review and the Right to a Jury Trial in Welfare Benefit Claims*, 37 J. Marshall L. Rev 629, 630 (Spring 2004) ("the level of

review a court applies, whether *de novo* or deferential, often determines the outcome of a benefits dispute."). Defendants also argued that any potential remedies to individual class members should be offset because they did better under the Revised Memorandum of Understanding or obtained DB Plan benefits that they would not have received otherwise. Miessner Decl. ¶ 15-16. Given the significant risks–standard of review risk, class certification risk, statute of limitations risk, remedies risk and the complex claims and challenges undertaken by Class Counsel–it is doubtful competent ERISA lawyers would undertake this case without the right to seek an attorney's fee award of at least 25%. And given the substantial risks and potential "undesirability," a 25% fee award from the common fund is reasonable.

(5) <u>The time and labor required by counsel:</u>  Class Counsel worked on this matter for five years.  As set forth above and as detailed in the Martin Decl., through the date of filing of this motion, Class Counsel spent over 1,490.78 hours working on this matter making efforts to ensure that the work was performed efficiently and without duplication of effort. Martin Decl. ¶20. Class Counsel's work included analyzing Plan documents and vigorously pursuing discovery resulting in the receipt of more than 70,000 pages of documents from Defendants and third parties. *Id.* ¶¶ 10-13. Class Counsel undertook or defended four depositions in Phoenix and Denver, including a Rule 30(b)(6) deposition and the deposition of the Named Plaintiff and was preparing to take 8 more depositions and brief summary judgment when the Settlement Agreement was reached. *Id.* Class Counsel filed and won a motion for class certification, successfully moved to strike Defendants' motion to dismiss and amended the Complaint thereafter.  Docs. 61, 19. Class Counsel employed two experts, including an actuary and a forensic accountant, to analyze class damages and Defendants' assertions regarding claims and class losses and remedies and to respond to Defendants' expert.  Martin Decl. ¶¶13-14. The parties engaged in efforts to resolve numerous discovery disputes, met informally several times and resolved discovery disputes requiring numerous meet and confer conferences, letters and emails. In preparation for summary judgment, Plaintiff was analyzing factual and legal issues which

also assisted in negotiating the final settlement. *Id.* ¶12.

Class Counsel also expended substantial hours in efforts to resolve this matter both in formal and informal meetings and conferences with the mediator and opposing counsel and in working with Class Counsel's expert in analyzing various damages models and calculations in efforts to reach the Settlement Agreement through arms-length negotiations. *Id.* ¶¶ 15-17. Class Counsel also worked with the expert extensively during the mediation and after the Settlement Agreement was achieved in coming up with a fair and equitable Plan of Allocation. *Id.* ¶ 17.

(6) <u>The preclusion of other employment:</u>  As set forth in the Martin Decl. ¶26, Martin & Bonnett is a small firm and can handle only a limited number of cases at any one time. The prosecution of this case was risky financially and impacted the ability to take on other cases. Litigating this case required thousands of hours and significant expenses. The case was a significant factor in determining what matters Martin & Bonnett might have otherwise have taken. *Id.*

(7)    <u>The customary fee charged in matters of the type involved:</u>  As set forth herein, even though 25% of the common fund is the benchmark/starting point in this Circuit, in cases with similar recoveries and even less impressive results, courts in this Circuit have regularly awarded 30-33% of the recovery.  The hourly fees in this case total over $692,891 to date which, as set forth in the Martin Decl., are based on hourly rates that are clearly comparable or below the rates of attorneys with comparable ERISA pension class action litigation experience.  The lodestar crosscheck is approximately as of today's date is approximately 2.09 and Class Counsel estimates based on anticipated additional work including preparation for the final fairness hearing and additional work that the lodestar multiplier will be somewhere between 2 and 2.05. Martin Decl. ¶¶22-24.  This lodestar crosscheck  also fully supports the requested fee of 25% of the common fund.

(8)    <u>Whether the fee contracted between the attorney and the client is fixed or contingent:</u>  The fee agreement between Class Counsel and Mr. Bryant provides that Class

Counsel was to receive the greater of the attorneys' fees awarded by the Court or 33.3% of the total recovery and a higher percentage of the total recovery in the event of an appeal. Martin Decl. ¶ 10. Class Counsel's attorneys' fee application requesting 25% with costs to be reimbursed separately by Defendants and not from the Settlement Fund represents a downward adjustment of the contingency fee agreement.

(9)   <u>Any time limitations imposed by the client or the circumstances</u>:  This matter involves pension benefits. Like Mr. Bryant, several of the Class Members are retirees or will likely be retiring in the near future. Absent settlement, this case could take years to achieve any final result. A potential trial, at least on damages, seemed likely and a subsequent appeal could take years. The excellent results achieved at this time without trial and appeal through Class Counsels' efforts are significant and the time value of the Settlement Fund will greatly benefit the Class Members.

(10)   <u>The experience, reputation and ability of counsel.</u>   As set forth in the accompanying declarations at Ex. C to the Martin Decl., see Martin Decl. ¶7, Class Counsel are experienced and knowledgeable attorneys with significant experience in handling ERISA litigation and employment-related claims with an excellent reputation. The results in this case also establish that Class Counsel performed ably in achieving the Settlement Agreement.

(11)   <u>The nature and length of the professional relationship between the attorney and client</u>: Class Counsel undertook this case for Plaintiff, although it had no prior relationship with him, and agreed to do so on a contingency basis. Class Counsel began this matter by assisting Plaintiff in trying to obtain documents and negotiate a resolution even before the litigation commenced in 2013. Bryant Decl. ¶8.

(12)   <u>Awards in similar actions</u>:   As noted above, in cases where there were significantly lower net recoveries to class members with settlements in similar ranges, courts in the circuit have regularly awarded fees ranging from the benchmark of 25% to 33%. Given the factors enumerated above, including the high percentage of recovery to Settlement

Class members, the hours expended and the settlement fund created, the benchmark award of 25% is reasonable and supported by the cases cited above.

### C. The Lodestar Cross-Check Supports the Requested 25% Fee

A lodestar cross-check also confirms that the requested fee is reasonable and appropriate. "The lodestar may provide a useful perspective on the reasonableness of a given percentage award". *See Vizcaino, supra* at 1050. The lodestar method is used as a cross-check of the percentage method and is performed with a less exhaustive cataloguing and review of counsel hours. *See Barbosa,* 297 F.R.D. 431 (citing *In re Rite Aid Corp. Sec. Litig.* 396 F.3d 294, 306 (3d Cir. 2005)) ("The lodestar cross-check calculation need entail neither the mathematical precision nor bean-counting"); *In re Immune Response Sec. Litig.,* 497 F.Supp.2d 1166, 1176 (S.D. Cal. 2007) ("Although counsel have not provided a detailed cataloging of hours spent, the Court finds the information provided to be sufficient for purposes of lodestar cross-check.").

In performing the lodestar cross-check, a court must first determine the dollar value of the proposed percentage-based award and cross-check the percentage based award against the lodestar calculation. *See Barbosa,* 297 F.R.D. at 451. The lodestar is calculated by multiplying counsel's reasonable hourly rates by the number of hours reasonably expended on the litigation. *D'Emanuele v. Montgomery Ward & Co., Inc.,* 904 F.2d 1379, 1383 (9th Cir. 1990); *Barbosa,* 297 F.R.D. 431. In determining the lodestar, the court can also use a multiplier to compensate attorneys for various other factors (including unusual skill, experience of counsel, risk of non-recovery, etc.). *See Barbosa,* 297 F.R.D. 431.

The lodestar crosscheck here confirms that the requested fees are reasonable. *See* Martin Decl. ¶¶ 24. Through the filing of this motion, lodestar fees are more than $692,891, which represents over 1,490 hours of attorney and paralegal/legal assistant time. Martin Decl. ¶¶23-24. Based on the hours expended, the attorneys' fee requested of $1,450,000 (25% of the $5,800,000 common fund) results in a modest lodestar multiplier of approximately 2 (*i.e.*, 2.09) and is anticipated to be between 2 and 2.05. This is well within the range the Ninth Circuit has found appropriate. *See, e.g., Steiner v. American*

*Broadcasting Co., Inc.* 2007 WL 2460326, at *2 (9th Cir. Aug. 29, 2007) (noting that lodestar multiplier of 6.85 "still falls well within the range of multipliers that courts have allowed"); *Vizcaino*, 290 F.3d at 1051 (Ninth Circuit affirmed fee award of 28% of common fund which resulted in lodestar multiplier of 3.65 and noted in Appendix, *id.* at 1052, that of 24 cases identifying multiplier only seven awarded multipliers of less than 2.0, eight awarded multipliers of between 2 and 3, and nine awarded multipliers greater than 3); *City of Roseville Employees' Ret. Sys. v. Micron Tech., Inc.,* 06-CV-85-WFD, 2011 WL 1882515 (D. Idaho Apr. 28, 2011) (lodestar multiplier of 2.72 "is relatively standard."); *Thieriot v. Celtic Ins. Co.,* C-10-04462-LB, 2011 WL 1522385 (N.D. Cal. Apr. 21, 2011) (awarding 33% of settlement fund as attorneys' fees based on lodestar crosscheck which resulted in multiplier of 1.94, which was "within the customary range").

**D.  Class Counsel's Request for Reimbursement of Costs that Will Be Paid Separately By Defendants and not from the Common Fund is Appropriate**

As part of the motion, Class Counsel also seeks approval for reimbursement of $90,143.02 in costs and expenses to be paid by Defendants and not from the Settlement Fund. This case was expensive to prosecute. As set forth in the Martin Decl.¶25, the expenses incurred in this litigation totaled $90,143.02 as of today's date. The most significant expenses were costs associated with Plaintiff's forensic accountant who calculated and confirmed losses for Class Members and costs of Plaintiff's consulting pension actuary, four depositions including three in Denver, the mediation and various miscellaneous expenses relating to prosecuting the Settlement Class members' claims. *Id*. *See* Exhibits A and B to Martin Decl.

**II.   A CASE CONTRIBUTION AWARD TO PLAINTIFF IS APPROPRIATE**

Plaintiff and Class Counsel also seek approval of the Case Contribution Award to be paid to Mr. Bryant for his significant services to the Settlement Class. This amount is separate from the common fund and will not be paid from the Gross Settlement Fund.

The Ninth Circuit has held that it is appropriate for named plaintiffs in class actions to receive incentive/service awards as compensation for the work done on behalf of the class. In

evaluating the reasonableness of a case contribution or incentive award, courts should consider factors including the actions taken by the plaintiff to protect the interests of the class; the degree to which the class has benefitted from those actions; and c) the amount of time and effort the plaintiff expended in pursuing the litigation. *Staton, supra* at 977. Court have also considered the time expended by the class representative, the fairness of the hourly rate for the time incurred by the named plaintiff, and how large the incentive award is compared to the average award class members expect to receive.

Here, Plaintiff put in substantial time and his efforts were extensive. Plaintiff was an active participant in the litigation and his actions benefited the Class Members. As set forth in his declaration, Plaintiff pursued his claims through a difficult administrative claim process despite the fact and hired experienced ERISA class action litigators. Bryant Decl. ¶¶7-12. Mr. Bryant also undertook to represent similarly situated individuals, knowing he would have an obligation to represent those individuals, not just himself, and that such a determination would likely add significant time and complexity to the case. *Id.* ¶ 10.

Plaintiff played an active role in the litigation, researching documents, responding to discovery requests, preparing for his deposition, being deposed and monitoring the pleadings and regularly conferring with Class Counsel. *Id.* ¶¶7-17. Plaintiff spent hours litigating this case and has spent more and will spend more time on this matter seeing it through to its conclusion. *Id.* His actions provided significant benefits to the Class Members. The requested Case Contribution Award represents a fraction - less than ½ % of the overall Settlement Fund (.43%). At approximately $72 per hour, this is reasonable and within the hourly range for Mr. Bryant's skilled trades occupation of journeyman steamfitter welder. Bryant Decl. ¶16. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 948 (9th Cir. 2015) (approving $45,000 in incentive awards to class representatives based on the $45,000 in incentive awards making up .17% of the total settlement fund where the litigation was "complicated" and took up quite a bit of the class representatives' time). *Id.* at 948–49, 976–77; *see also Lee v. Enter. Leasing Co.-W.*, No. 3:10-CV-00326-LRH, 2015 WL 2345540, at *11 (D. Nev. May 15, 2015) (approving incentive awards of

$10,000 each that would not impact the recovery available to other class members for plaintiffs who were involved in litigation and who worked to ensure that case was successful); *Greene v. Gino Morena Enterprises, LLC*, No. 13CV1332 JM NLS, 2014 WL 5606442, at *3 (S.D. Cal. Nov. 4, 2014) (approving $10,000 incentive award to each plaintiff: "it is readily apparent that the class benefitted from Plaintiffs' decision to file suit and pursue this action. As discussed, the settlement correlates to approximately 43% of recoverable damages, which, as noted above, is generally considered a favorable result.").

## CONCLUSION

For the foregoing reasons, Plaintiff and Class Counsel respectfully request that the motion for attorneys' fees be granted and that the Court award Class Counsel attorneys' fees in the amount of $1,450,000 to be paid from the common benefit Settlement Fund created through Class Counsel's efforts, which is 25% of the Settlement Fund. Plaintiff also seeks approval of the reimbursement of costs and expenses incurred in prosecuting this action in the amount of $90,143.02 to be paid separately by Defendants pursuant to Section III(I) of the Settlement Agreement.

Plaintiff and Class Counsel also request that the Court approve the Case Contribution Award to Mr. Bryant of $25,000 to be paid from the Settlement Fund.

Respectfully submitted this 21st day of October 2015.

                                      **MARTIN & BONNETT, P.L.L.C.**

                              By:  <u>s/Susan Martin</u>
                                  Susan Martin
                                  Jennifer L. Kroll
                                  1850 N. Central Ave. Suite 2010
                                  Phoenix, AZ 85004
                                  (602) 240-6900

                                  Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on October 21, 2015 I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Michael Keenan
Ward, Keenan & Barrett, PC
3838 N. Central Avenue, Suite 1720
Phoenix, AZ 85012

Keith Overholt
Jeffrey D. Gardner
Jennings, Strouss & Salmon, P.L.C.
One East Washington Street, Suite 1900
Phoenix, AZ 85004-2554

Attorneys for Defendants

s/J. Kroll